MONSERRATE GARCÍA DE QUEVEDO, demandante y apelada, *v.* LA ASAMBLEA MUNICIPAL DE AÑASCO, P. R., compuesta por sus miembros ADOLFO MÉNDEZ, FILOMENA VALENTÍN, B. SANTOS RIVERA, C. SANTOS RIVERA, JUSTO RIVERA, J. ROMÁN, R. RIVÉ GÓMEZ, T. LAMBERTY y F. ESTEVES GIMENO, demandada y apelante.

No. 6424.—*Sometido:* Junio 15, 1934. *Resuelto:* Septiembre 29, 1934.

*Ildefonso Freyre,* abogado de la apelante; *M. Figueroa del Rosario,* abogado de la apelada.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

El 5 de diciembre de 1932 doña Monserrate García de Quevedo dirigió a la Asamblea Municipal de Añasco un escrito que copiado en lo pertinente, dice:

"1.—Que con fecha de 24 de julio de 1931, por escritura No. 73, otorgada ante el notario Mario Figueroa del Rosario, de este pueblo, adquirió por compra a doña Tomasa López la siguiente propiedad:

" 'Casa de madera, terrera, de balcón al frente, techada de tejas, sita en la calle principal, de Añasco, P. R., sobre un solar de mil ciento diecisiete metros cuadrados, de propiedad y no ejido, que colinda por el norte con dicha calle; por el sur con el caño La Puente; por el saliente con casa de doña María Arrillaga; y por el poniente con casa de M. García de Quevedo.'

"2.—Que debido a que dicha casa estaba en estado de ruinas, la compareciente procedió a la destrucción de la misma, quedando dicho solar limpio y libre para una nueva construcción sobre el mismo.

"3.—Que la compareciente se propone construir sobre el dicho solar un edificio de concreto, para almacén cuyos planos se acompañan a esta petición, y se hacen parte de la misma.

"Por todo lo cual, y siendo él solar de la propiedad particular de la compareciente, a los efectos de cumplir con la ordenanza sobre

construcciones y ornato público solamente, solicita se le conceda el permiso para dicha construcción y al efecto acompaña los derechos correspondientes.''

A la solicitud proveyó la Asamblea el 8 de febrero de 1933, adoptando una ordenanza que, en lo atinente, dice:

''Ordenanza Concediendo en Usufructo un Solar de Propiedad de Este Municipio de Añasco a Doña Monserrate García de Quevedo para Fabricar Sobre él un Edificio de Concreto y para Otros Fines.

''Por cuanto: Doña Monserrate García de Quevedo acude a esta Asamblea Municipal solicitando permiso para fabricar un edificio de concreto en un solar frente a la plaza Ibáñez que alega ser de su propiedad;

''Por cuanto: La peticionaria acompaña a la solicitud una certificación del Registrador de la Propiedad . . . haciendo constar que el solar de 1,117 metros cuadrados . . . se halla inscrito . . . a favor de don Ernesto Esteve Vidal, por expediente posesorio . . . de 16 de diciembre de 1881;

''Por cuanto: Según información de algunos asambleístas estas inscripciones fueron declaradas nulas y sin ningún valor en virtud de una sentencia dictada en un pleito seguido por este municipio allá por el año 1902;

''Por cuanto: La peticionaria también acompaña a la solicitud el recibo No. 301 de fecha diciembre 10 de 1932 a su favor expedido por el Tesorero Municipal por licencias y permisos de la construcción de la obra por estar comprendido el solar en la primera zona y además incluye un plano para la obra la que dedicará a almacén;

''Por cuanto: La Sección 54 de la Ley Municipal vigente concede a las Asambleas Municipales la facultad de ceder en usufructo solares para fabricar sobre ellos edificios en las condiciones que fijen las ordenanzas aprobadas al efecto;

''Por tanto: *Ordénase por la Asamblea Municipal de Añasco, Puerto Rico.*

''Sección 1.—Por la presente se concede en usufructo el solar descrito en esta ordenanza de propiedad de este municipio a doña Monserrate García de Quevedo para fabricar sobre él un edificio de concreto para dedicarlo a almacén, debiéndose ajustar a las condiciones del plano presentado y a pagar por adelantado un canon anual de tres centavos por cada metro comprendido en dicho solar o sean treinta y tres dólares cincuenta y un centavos, pagados antes de continuar la

obra, debiendo construir una acera del mismo ancho de la existente en dicha calle principal en todo el frente de la mencionada calle y respetar y hacer cumplir todas las ordenanzas aprobadas o que se aprueben que se refieran al ornato y salud pública y disponiéndose además, que la solicitante ni ninguna otra persona podrá instalar en dicho edificio establecimientos de Salas de Emergencias, Salas de Curaciones, Hospitales, Clínicas u otros establecimientos de hospitalización.

. . . . . . . . . . "

No conforme la peticionaria, el 24 de febrero de 1933 inició el presente recurso de *certiorari* en la Corte de Distrito de Mayagüez suplicando a la corte que declarara nula la ordenanza en cuestión por los siguientes fundamentos:

". . . . . porque no especifica los derechos de las partes o sus sucesores respecto a la propiedad de los edificios, su reconstrucción, en los casos en que fueren destruídos o deteriorados y tampoco se especifica que el edificio en el solar estará sujeto al pago de contribución, en contrario a lo exigido por el artículo 70 de la Ley Municipal vigente.

"Porque impone a la peticionaria un canon o contribución por el uso del solar anualmente sin garantizarse la uniformidad de dicha contribución puesto que ni en dicha ordenanza ni en ninguna otra se establece que el tipo de tres centavos impuesto a la peticionaria por cada metro cuadrado en primera zona será el mismo para todos los solares en dicha zona y aplicable sin distinción ni discriminación a todas las personas que usen solares en dicha zona ahora y en lo sucesivo, en contrario a lo que dispone el artículo 1, sección 8 de la Constitución de los Estados Unidos y el Artículo 2 de la Ley Orgánica de Puerto Rico, aprobada por el Congreso de Estados Unidos el día 2 de marzo de 1917;

"Porque se restringe el uso de la propiedad de la peticionaria de manera irrazonable al imponerle la condición de que ni ella ni ninguna otra persona podrá instalar en el edificio que se construya 'establecimiento de salas de emergencia, salas de curaciones, hospitales, clínicas y otros establecimientos de hospitalización,' en contrario a lo que dispone la Enmienda XIV de la Constitución de Estados Unidos de América y el Artículo 2 de la Ley Orgánica para Puerto Rico, aprobada por el Congreso de Estados Unidos el día 2 de marzo de 1917;

"Porque menoscaba el valor de un contrato, el de compraventa

celebrado entre la peticionaria y doña Tomasa López referente a la compraventa del solar en cuestión, al disponer que el solar es del municipio y siempre ha sido del municipio, sin oír a la peticionaria y a la dicha vendedora, en contrario a lo que dispone la Constitución de Estados Unidos de América, Artículo 1, Sección 10, y el Artículo 2 de la Ley Orgánica para Puerto Rico, aprobada por el Congreso de Estados Unidos el 2 de marzo de 1917;

"Porque priva a la peticionaria de su propiedad sin el debido procedimiento de ley al declarar y disponer en dicha ordenanza que el solar no es de ella sino del Municipio y apropiárselo a nombre del Municipio y concederlo como ejido del pueblo, o sea como propiedad del Municipio y como para uso público sin oír antes a la peticionaria con respecto a su derecho de propiedad, sin que ésta tuviera oportunidad de ventilar antes dicho derecho ni defenderse en juicio, sin la debida indemnización o compensación, todo ello en contrario a lo que dispone la Enmienda XIV de la Constitución de Estados Unidos de América, el Artículo 2 de la Ley Orgánica para Puerto Rico aprobada por el Congreso de los Estados Unidos el 2 de marzo de 1917 y el Art. 282 del Código Civil Revisado de 1930."

Expedido el auto, pidió la Asamblea su anulación por los motivos que siguen:

"1.—Porque en un recurso de *certiorari* de esta naturaleza solamente se puede resolver si la Asamblea demandada tuvo o no jurisdicción, o se excedió en el ejercicio de la misma, o el procedimiento adoptado para ejercitarla fué erróneo, o actuó *ultra vires,* y no se puede entrar a considerar cuestiones sobre el mejor título sobre propiedad inmueble.

"2.—Porque la ordenanza en cuestión no lesiona derechos constitucionales de la querellante ni es contraria a la Ley Orgánica ni a las leyes de Puerto Rico.

"3.—Porque la querellante tiene otros remedios adecuados en ley y los ha tenido sin que los haya ejercitado en su oportunidad.

"4.—Que no es a la Asamblea Municipal de Añasco a quien ha debido demandarse en este caso."

El *return* comprende el escrito de la peticionaria y la ordenanza que hemos transcrito, una certificación expedida por el Registrador de la Propiedad de Mayagüez de la que aparece que en octubre 14, 1901, el Municipio de Añasco inscribió a virtud de expediente tramitado en la corte del dis-

trito el dominio de cincuenta cuerdas vara y tercia del terreno que forma los ejidos del Ayuntamiento adquiridos por segregación de las sesenta y dos cuerdas vara y tercia cedídasle por don Luis de Añasco, con nota de gran número de segregaciones, otra certificación expedida por el mismo funcionario de la que consta que está vigente la inscripción del solar de que se trata hecha desde el 25 de enero de 1882 a virtud de información posesoria a favor de Ernesto Esteve Vidal y copia de la escritura no inscrita a virtud de la cual Constantino Fernández como apoderado de doña Tomasa López Viuda de Arrillaga vende el 24 de julio de 1931 a la peticionaria doña Monserrate García de Quevedo por doscientos veinte y cinco dólares una casa de madera con el solar en cuestión, manifestando no hallarse inscrita la propiedad en el registro.

Tomó la corte bajo su consideración el caso y lo resolvió por sentencia de mayo 3, 1931, que, en parte, dice:

"POR CUANTO, La corte ha llegado a la conclusión de que la ameritada ordenanza copiada en la petición es nula y sin ningún valor porque si bien el municipio pudo negar el permiso para fabricar alegando que el solar era un ejido del pueblo y podía conceder el permiso como tal pero no puede poner las condiciones contenidas en dicha ordenanza, ni privar a una persona de su propiedad sin un debido procedimiento de ley, ni mucho menos imponer una contribución que no es uniforme en todo el municipio, habiendo llegado además la corte a la conclusión de que la Asamblea Municipal ha actuado con prejuicio en este caso por la forma en que está redactada dicha ordenanza;

"POR TANTO: Por la presente se declara con lugar esta solicitud de *certiorari* y se declara nula y sin ningún efecto legal la ordenanza aprobada por la Asamblea Municipal de Añasco en 8 de febrero de 1933 y aprobada por el Alcalde el 11 del mismo mes y año y que se titula: 'Ordenanza cediendo en usufructo un solar de propiedad del Municipio de Añasco a doña Monserrate García de Quevedo para fabricar sobre él un edificio de concreto y para otros fines.' Se imponen las costas con honorarios de abogado a la parte demandada."

No conforme la Asamblea apeló para ante este Tribunal, celebrándose la vista de la apelación el 15 de junio último.

El recurso ejercitado por la peticionaria es el *certiorari* expresamente autorizado por la Ley Municipal vigente —Ley número 53 de 1928, Leyes de ese año, página 335— en su artículo 83, así:

"Las cortes de distrito tendrán jurisdicción a instancia de parte perjudicada:

"(a) Para anular o revisar cualquier acto legislativo o administrativo de la Asamblea Municipal, de la Junta Administrativa, del Alcalde o de los demás funcionarios municipales que lesione derechos constitucionales de los querellantes o sea contrario a la Ley Orgánica o a las leyes de Puerto Rico, mediante *certiorari*."

Insistiendo en los méritos de su moción para anular el auto la apelante sostiene que las cuestiones que plantea la peticionaria no son propias para ser resueltas en un recurso de *certiorari,* aunque no se trate del *certiorari* clásico sino del expresamente autorizado por la ley municipal.

Lo primero que salta a la vista es que está envuelta una verdadera cuestión de propiedad. La peticionaria al dirigirse a la Asamblea lo hizo como dueña del solar en cuestión acompañando a su escrito los documentos en que basa su derecho. Y la Asamblea al aprobar la ordenanza cuya nulidad se pide partió de la base de que el dueño del solar no es la peticionaria sino el municipio y concedió a la peticionaria el usufructo.

La parte apelada tratando de obviar la cuestión dice en su alegato:

"Afirman los demandados que la querellante tenía otros remedios en ley y no quiso ejercitarlos y que por esta razón ha debido negarse o anularse el auto. Esta afirmación surge de dos errores que cometen los demandados al apreciar este procedimiento; creen que el objeto único de la querellante era discutir su derecho de propiedad y si era así tenía que utilizar el remedio previsto por el Art. 282 del Código de Enjuiciamiento Civil de P. R.; y creen que el remedio de certiorari establecido en este caso es el remedio de certiorari clásico y pretenden aplicar toda la jurisprudencia existente sobre este último.

"Una lectura simple de la petición revela que la intención primordial de la querellante no fué ventilar en este recurso su derecho

de propiedad sobre el solar; naturalmente para estar más de acuerdo con el *return* y demás actuaciones de la Asamblea . . . . . fué que se incluyó una alegación específica de impugnación a la ordenanza por este motivo, la del párrafo (*d*) del apartado 9 de la petición; pero se verá que la petición contiene otras alegaciones suficientes sin necesidad de ésta, y más esenciales que ésta, las realmente esenciales, contenidas en los párrafos (*a*) y (*b*) del dicho apartado 9, por ejemplo. . . . . . Si aquélla hubiera sido la única alegación motivando la impugnación, la Corte pudo haber desestimado; pero si además constaban estas otras, la corte podía hacer como hizo caso omiso de aquélla y ventilar estas otras que le daban jurisdicción completa. En eso actuó correctamente y no cometió error.''

La verdad es que no vemos cómo pueda prescindirse de la dicha cuestión de propiedad, a menos que la peticionaria de modo claro y definitivo abandone su posición de dueña y acepte la de usufructuaria.

Si la peticionaria insiste en su derecho de propiedad, entonces al serle negado por la Asamblea debió ciertamente acudir a las cortes mediante el procedimiento que autoriza al artículo 282 del Código de Enjuiciamiento Civil, a saber:

''Cualquiera persona puede promover una acción contra otra que reclame un derecho o participación en propiedad real que fuere opuesto a dicha acción para el efecto de que se resuelva la contradicción entre ambas.''

Si lo abandona y parte de la base del derecho de propiedad del municipio, entonces nos inclinaríamos a resolver que no tiene razón la peticionaria al impugnar la ordenanza, o por lo menos que no existen datos bastantes en los autos para concluir que la asamblea actuó sin jurisdicción o lesionó algún derecho constitucional de la querellante, o violó la Ley Orgánica o alguna ley de Puerto Rico.

Ambas partes están conformes en que es el artículo 70 de la dicha ley municipal el que regula la concesión de solares. Dicho artículo dice, en lo pertinente:

''La Asamblea Municipal podrá, a petición conceder solares a perpetuidad, para la construcción de casas en los mismos, en las

condiciones que fije aquélla en la ordenanza aprobada al efecto; y, una vez concedido un solar como queda dicho, tendrá el dueño de la casa construída en él, el uso de dicho solar durante todo el tiempo que mantuviere allí un edificio en buenas condiciones de acuerdo con los reglamentos establecidos en dicha ordenanza.

"Las Asambleas Municipales deberán especificar en las concesiones que otorgaren los derechos respectivos del cedente y del cesionario o sus sucesores respecto a la propiedad de los edificios, su reconstrucción, en los casos en que fueren destruídos o deteriorados.

"La cesión se hará necesariamente mediante ordenanza o resolución adoptada por la mayoría del número total de miembros de que se componga la Asamblea; siendo entendido que no se tomará en consideración solicitud alguna si el peticionario no la acompaña con los planos y presupuestos para el edificio que se haya de construir, sobre el solar solicitado, de modo que la asamblea pueda darse cuenta de la obra al acordar la concesión.

"              .        .        .        .        .        .        .        .        .        .        .

"Entre las condiciones de la concesión que se establezcan para cada caso, podrá figurar la del pago de un canon anual al municipio concedente, el cual canon será por lo menos igual al importe de la contribución sobre la propiedad que correspondería a ésta, si estuviere afectada al pago de esa contribución, y en dicha concesión se estipulará, además, que cualquier edificio en la propiedad arrendada estará sujeta al pago de contribución."

El primer motivo de nulidad que se alega como sabemos es que la concesión no especifica los derechos de las partes o sus sucesores respecto a la propiedad de los edificios, su reconstrucción, en los casos en que fueren destruídos o deteriorados y que el edificio que se construya en el solar estará sujeto al pago de contribución.

Realmente los párrafos segundo y sexto del artículo 70 que dejamos transcritos ordenan que se haga en las concesiones tal especificación y aquí no se hizo, pero ello hace que la ordenanza sea deficiente, y no nula. Una simple petición a la asamblea y una ordenanza enmendatoria o adicional hubieran sido suficientes para corregir el defecto.

Se sigue alegando que la ordenanza es nula porque no impone un canon o contribución uniforme.

Un canon no es una contribución y todo lo que dice la

ley es que "entre las condiciones de la concesión que se establezcan para cada caso, podrá figurar la del pago de un canon anual al municipio concedente, el cual canon será por lo menos igual al importe de la contribución sobre la propiedad que correspondería a ésta." No podemos percibir violación alguna de la ley en la condición impuesta sobre este extremo por la ordenanza en cuestión.

█ Y se alega, por último, que la restricción impuesta al uso de la edificación es irrazonable.

La ley invocada comienza diciendo que la asamblea podrá, a petición, conceder solares a perpetuidad, para la construcción de casas en los mismos, *en las condiciones que fije* en la ordenanza que apruebe al efecto.

La facultad de fijar las condiciones bajo las cuales concede el usufructo de su propiedad, inherentes a la condición de dueño de la misma, se reconoce expresamente en la ley.

¿Es arbitraria la fijada en este caso? ¿Es contraria a los fines de la ley? A nuestro juicio los documentos que están ante la corte no permiten contestar esas preguntas en la afirmativa. No conocemos los fundamentos que tuvo para actuar en la forma en que lo hizo la asamblea. Quizá no fueron justos, pero la restricción impuesta no es de tal naturaleza que permita concluir por el solo hecho de su imposición, que es irrazonable y contraria a la ley, la equidad o la justicia. Pueden concebirse casos en que dicha restricción esté justificada en determinados sitios de una población.

No surge aquí la situación que motivó la anulación de la ordenanza en el caso de *San Diego Tuberculosis Association* v. *City of San Diego,* 186 Cal. 252, que invoca la apelada.

Los hechos en dicho caso se narran en la opinión de la Corte Suprema, como sigue:

"La demandante es una corporación organizada para fines caritativos, y durante años ha poseído y explotado un hospital para el tratamiento de personas afectadas de tuberculosis. El hospital está situado en la ciudad de East San Diego, que es un pequeño

municipio contiguo a la ciudad de San Diego propiamente dicha, y los demandados lo son el municipio y algunos de sus funcionarios. En julio 3, 1919 los síndicos de la ciudad aprobaron una ordenanza declarando a todo hospital para el tratamiento de personas atacadas de enfermedades contagiosas o infecciosas, un estorbo público, haciendo que el sostenimiento de tal hospital dentro de los límites de la ciudad constituyera un delito menos grave, decretando que su sostenimiento constituyera un delito separado durante cada día que fuera así explotado, y fijando pena de multa o cárcel para cada delito. Luego de aprobada la ordenanza las autoridades de la ciudad iniciaron una serie de acusaciones criminales contra la demandante, y amenazaron con arrestar y procesar a sus funcionarios y empleados y a continuar arrestándolos y procesándolos hasta que la demandante se viera precisada a clausurar su hospital. Fundándose en que la ordenanza es nula y en que la demandante sufriría daños irreparables en sus derechos de propiedad a sostener y a explotar el hospital y que carece de un recurso adecuado, solicitó un *injunction* para que se impidiera a los demandados que trataran de hacer cumplir la ordenanza.''

Y la doctrina establecida lo fué en los siguientes términos:

''Se nos presentan dos cuestiones: Primero, ¿es la ordenanza nula? y segunda, aún si lo es, ¿puede su cumplimiento por parte de los funcionarios de la ciudad ser restringido mediante un recurso de *injunction?* La respuesta a ambas preguntas nos parece clara.

''La ordenanza tiene como justificación únicamente el ejercicio del poder de policía de que está investida la ciudad. Este poder desde luego es muy amplio, mas no ilimitado. Una limitación que se ha hecho cumplir en numerosos casos es que una ordenanza que trata de ser un ejercicio del poder de policía por parte de la ciudad 'no puede ser arbitraria o irrazonable. El ejercicio del poder de policía no puede servir de abrigo a la obstaculización o supresión de un negocio lícito.' . . . . .

''Siendo ésa la ley, ¿es la ordenanza aquí envuelta razonable en su parte esencial, o sea, la prohibición dentro de los límites de la ciudad para sostener o explotar un hospital para el tratamiento de enfermedades contagiosas? Tal prohibición dista mucho de ser reglamentación, y puede tener por justificación tan sólo el hecho de que tal hospital, no importa con el celo que se dirija, es una amenaza para la paz, moral, salud o comodidad públicas. Que un hospital moderno, bien dirigido, aún para el tratamiento de enferme-

dades contagiosas e infecciosas no es tal amenaza, sino por el contrario una de las instituciones más beneficiosas, no es necesario argumentarlo. No existe el menor peligro de contagio y éste es quizá el único fundamento posible que podría servir de objeción. No vacilamos en resolver que una ordenanza que prohibe el sostenimiento en cualquier parte de la ciudad de una institución tan necesaria en nuestra vida moderna y tan beneficiosa sea enteramente irrazonable y nula. . . . .

"Respecto a la segunda cuestión, o sea, impedir que la ordenanza sea puesta en vigor, la regla ha sido expuesta en el caso de Abbey Land Co. v. San Mateo, supra, a que acabamos de hacer referencia (167 Cal. 440, Ann. Cas. 1915 C, 804, 52 L. R. A. (N. S.) 408, 139 Pac. 1070.

" . . . . . . . . . .

"Es evidente en este caso que el hacer cumplir la ordenanza ocasionaría daños y perjuicios irreparables a la propiedad de la demandante, y que contra la amenaza de ponerla en vigor por medio de los repetidos procesos autorizados por la ordenanza, la demandante carece de remedio adecuado. Por ende, el caso cae dentro de la regla establecida en Abbey Land Co. v. San Mateo, supra, y de conformidad con los hechos alegados en la demanda la peticionaria tenía derecho a que se impidiera por medio de un *injunction* que se ponga la ordenanza en vigor."

Aquí no se trata de una medida general prohibiendo el establecimiento de clínicas en la población aplicable aún a las ya establecidas, sino de la concesión del usufructo de un determinado solar perteneciente al municipio que de acuerdo con la ley podrá otorgarse para la construcción de casas en las condiciones que el municipio fije en la ordenanza que apruebe al efecto. La casa antiguamente construída en el solar estaba dedicada al parecer a vivienda y la propia peticionaria especifica que la nueva edificación será un almacén, o sea una casa o edificio donde se guardan por junto o se venden cualesquiera géneros.

Bajo cualquier aspecto, pues, que el caso se considere, bien porque el *certiorari* no es el procedimiento adecuado para dirimir un conflicto de títulos o ya porque no se ha demostrado que la concesión en la forma en que fué hecha viole algún

derecho constitucional de la querellante o sea contraria a la Ley Orgánica o a cualquier otra ley de Puerto Rico, *la sentencia recurrida debe revocarse dictándose otra declarando la petición sin lugar, sin especial condenación de costas.*